Brown *vs.* Brice, Trustee of Causten.—June, 1827.

The provisional trustee of an insolvent debtor, appointed under the act of 1816, *ch.* 221, is the mere recipient of the property of the insolvent, which the law contemplates his obtaining immediate possession of from the insolvent himself, and not by suit against a third person.

Such a trustee is not authorised to assign the insolvent's judgments; and where one purchased such a judgment from that trustee, and collected the same, he is answerable for the amount received by him, to the permanent trustee, in an action for money had and received.

APPEAL from *Baltimore* County Court. *Assumpsit* for money had and received. The case, as agreed upon, was this: *James H. Causten* issued an attachment out of *Baltimore* county court against *Monte Verde*, for the recovery of a debt due to *Causten* before the 15th of April 1818, and the attachment was laid in the hands of *Peter A. Guestier*. At March term 1821, of said court, a verdict and judgment was obtained against the garnishee. An appeal was prayed by the garnishee, and the case carried to the court of appeals, where the judgment was affirmed, and an execution issued thereupon against

*Guestier*, the garnishee, who paid the amount to *Stewart Brown*, as herein after stated. On the 15th of April 1818, *Causten* applied for the benefit of the insolvent laws of this state, and *Frederick Jenkins* was duly appointed his provisional trustee, and gave *Causten* the following authority to collect and settle claims due to him. "Mr. *James H. Causten* is authorised to settle any transaction in relation to his late business.

(Signed,)    *Fredk. Jenkins*, Trustee.

*Balt.* 1 May, 1818."

And under this authority, and the authority of *Causten*, and at the instance of *Guestier*, *Stewart Brown* paid the judgment, deducting the legal interest, and took an assignment thereof from *Causten*, as well on his behalf, as on behalf and as the agent of the provisional trustee in virtue of the authority aforesaid. *Brown* knew at the time he did so, that *Causten* had petitioned, and that *F. Jenkins* was the provisional trustee. That the judgment was entered for *Brown's* use on the docket of the court of appeals, under the authority of *Jenkins* and *Causten* as above. The present plaintiff was duly appointed the permanent trustee of *Causten*, after the said assignment to *Brown*, and before *Brown* had collected the amount of said judgment from *Guestier*. The plaintiff gave notice to *Guestier* after the judgment was affirmed and execution issued, not to pay the amount to *Brown*, and was about to apply for an injunction, when it was agreed by the parties to this action that the money should be paid to *Brown* by the garnishee, *Guestier*, subject to any claim the present plaintiff might have as trustee. *Causten* obtained a final discharge as an insolvent debtor on the 26th of September 1818. And it was also agreed that if the court should be of opinion that *Brown* derived no right or title to the judgment so satisfied by and assigned to him, then a judgment to be entered for the plaintiff for the amount of the judgment in the court of appeals as affirmed, with interest and costs; otherwise for defendant.

A judgment *pro forma* was entered on the case stated, for the plaintiff, and the defendant appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and ARCHER, and DORSEY, J.

*Williams*, (District Attorney of *U. S.*) for the Appellant, contended, 1. That the advance of money made by *Brown*, at the instance of *Guestier*, was a payment by *Guestier* of the judgment recovered against him under coercion of the law, and the payment was, under the circumstances stated, a valid one, and binding on the insolvent's estate.

2. That even if not made under coercion of the law, the payment was a valid one, either as made by *Guestier* or by *Brown*, having been made to persons legally authorised to receive it.

3. That no injunction could have been sustained to prevent the payment of the money to *Brown* by *Guestier*, at the time when such payment was made.

He referred to the acts of 1805, *ch.* 110, *s.* 8, and 1816, *ch.* 221, *s.* 2, 3. *Kennedy v Boggs,* 5 *Harr. & Johns.* 403. 3 *Petersdorff,* 625. *Page v Bauer,* 4 *Barn. & Ald.* 345. 3 *Petersdorff,* 807, *(notes,)* 922. *Foster v Allanson,* 2 *T. R.* 479.

*R. B. Magruder*, for the Appellee. On the *first* point, he cited *Martin v Mechanics Bank of Baltimore,* 6 *Harr. & Johns.* 239, 241, 245, 246; and the act of 1715, *ch.* 40.

On the *second* point, he cited *King v Leith,* 2 *T. R.* 143. *Hindle v Bell,* 3 *Serg. & Low.* 61. *Kennedy v Boggs,* 5 *Harr. & Johns.* 408.

On the *third* point, he cited *Cumming v Roebuck,* 3 *Serg. & Low.* 64.

BUCHANAN, Ch. J. delivered the opinion of the court. This case arises out of, and depends upon, the construction of the act of 1816, *ch.* 221, relating to insolvent debtors in the city of *Baltimore.* The provision of that act, so far as concerns the appointment and duties of provisional trustees, is, "that the commissioners shall appoint a provisional trustee, to take possession, for the benefit of the creditors, of such insolvent debtor, of all property, estate and effects, books, papers, accounts, bonds, notes, and evidences of debts," and no other duty is by that act assigned to the provisional trustee so to be appointed, who is not so much as required to give bond for the faithful discharge of the trust reposed in him.

In *Kennedy v Boggs,* 5 *Harr. & Johns.* 403, it was decid-

ed by this court, that such provisional trustee could not sustain a suit in his own name, for the purpose of reducing to possession the property of the insolvent, he being only authorised to take possession for the benefit of the creditors; but that in order to acquire possession suit could only be brought in the name of the insolvent, in whom the title remained until the appointment of a permanent trustee.

He is the mere recipient of the property of the insolvent, which the law would seem to contemplate his obtaining immediate possession of, from the insolvent himself, and not by suit against a third person; since it is upon the report of the commissioners "that he is in possession of all the property of the insolvent," that the personal discharge is granted, which report is required to be made by the commissioners, in the language of the act, "immediately thereafter," that is immediately after the appointment of such provisional trustee, and the taking a bond for the appearance of the insolvent debtor to answer interrogatories, &c.

But for the authority, therefore, of *Kennedy v Boggs,* which is not intended to be disturbed, it might perhaps be plausibly questioned, whether a provisional trustee could sue at all even in the name of the insolvent, according to the spirit of the law, which contemplates a final discharge, and the appointment of a permanent trustee, in whom the property is to vest in a shorter time than would be required to bring a suit by the provisional trustee to a final issue. And his office being only to take possession of the property and evidences of debts of the insolvent, for the benefit of creditors, and that too without being required to give bond, it may well be doubted whether he has any authority in the name of the insolvent to sue for and collect his debts; to that extent the decision in *Kennedy v Boggs,* does not go.

The object of appointing a provisional trustee is that the property may be protected until the appointment of a permanent trustee, and the insolvent not permitted to waste or make way with it to the prejudice of the creditors. And hence he is required to take possession of the books, papers and accounts, and all evidences of debt; by which means the debts are placed beyond the reach or control of the insolvent, who not being in

possession of such evidences, can neither pass them away, nor sue for and recover the debts. If that was not the intention of the legislature, the providing for the appointment of a provisional trustee, and requiring him to take possession of all the evidences of debts, was perfectly nugatory. With respect to the provisional trustee himself, the express authority given to him is only to take possession of the evidences of debts, &c. He is not an officer in the confidence of the creditors; they have no participation in his appointment, and repose no trust in him. And if he is permitted to sue for and collect the outstanding debts, in the name of the insolvent, the creditors are placed entirely at his mercy, and are in a situation of very little, if any more security, than if there was no such provisional trustee. For, though he stands in the way of a waste and misapplication of the funds by the insolvent, yet there is certainly less danger of a total loss of those funds, when in the hands of many, in the shape of outstanding debts, than when drawn together into the hands of a single individual, who has given no security for the safe-keeping of those funds. And although the suspending the collection of the debts until the appointment of a permanent trustee, might in practice be accompanied by occasional inconvenience and loss, yet the law contemplates a final discharge, and appointment of such permanent trustee speedily after the application for the benefit of its provisions, and does not look to a delay pregnant with as much danger of loss as the collection of the debts by the provisional trustee. But if it be admitted that the provisional trustee has a right to sue for, and collect the debts, in the name of the insolvent, and so far as concerns this case, it may be admitted, yet it is very clear that he has no authority to pay or compound the debts of the insolvent, or to sell, or in any manner dispose of, his property, or assign away or transfer the evidences of debt; his duty is to take and retain the possession for the benefit of the creditors, until the appointment of a permanent trustee, in whom the title to all the property of the insolvent vests.

The case before us then is plainly this—*James H. Causten,* a citizen of *Baltimore,* having a claim against one *Monte Verde,* sued out an attachment, which was laid in the hands of *Peter A. Guestier. Causten* afterwards, on the 15th of April

1818, applied for the benefit of the insolvent laws. *Frederick Jenkins* was appointed provisional trustee, who on the 1st of April 1818, gave him authority to settle up his affairs; and on the 26th of September 1818, he obtained a final release. The attachment was prosecuted against *Guestier*, the garnishee, to a verdict and judgment in *Baltimore* county court at March term 1821, from which there was an appeal to this court, where the judgment was affirmed. Pending the appeal, *Causten*, under the authority given him by *Jenkins*, the provisional trustee, to settle up his business, sold the original judgment against *Guestier*, to *Stewart Brown*, the appellant, who with a knowledge that *Causten* had applied for the benefit of the insolvent laws, and that *Jenkins* was appointed provisional trustee, paid for it the amount, deducting the legal interest, and took from *Causten*, acting as well in his own behalf as agent of *Jenkins*, an assignment of the judgment, which on the same authority was entered on the docket of this court for the use of *Brown*. After this *John Brice*, the appellee, was duly appointed the permanent trustee; and after judgment was affirmed, and an execution had issued, he gave notice to *Guestier*, the garnishee, not to pay the amount to *Brown*, when it was agreed between *Brice* and *Brown*, that the money should be paid to *Brown*, subject to any claim that *Brice* might have to it as trustee, which was accordingly done; and this suit for money had and received, was brought to recover from *Brown* the amount so received by him. And the question raised and submitted to us is, whether *Brown* has a right to it under his purchase, and the assignment by *Causten* of the original judgment to him; or whether the title to it is in *Brice* as trustee? Whether the attachment originally sued out by *Causten* was properly prosecuted in his name to final judgment, is not now a question; the judgment being rendered, and afterwards on appeal affirmed without objection, it is conclusive; and the only inquiry is, whether it was competent to *Jenkins*, the provisional trustee, or to *Causten*, either on his own account, or as agent of *Jenkins*, to give to that judgment any direction different from that provided by the insolvent laws. *Causten* himself having before obtained a final release, could in law have no control over it—his right to dispose of it was gone; and *Jen-*

*kins* could neither sell or dispose of it himself, nor authorise another to do so, any more than he could dispose of a bond, or any specific piece of property of the insolvent, coming into his possession as provisional trustee for safe-keeping only.

It stood as an evidence of debt for the benefit of the creditors, and the right did not pass to *Brown* by the unauthorised assignment; but on the appointment of *Brice* as permanent trustee, vested in him.   If it were otherwise, it would always be in the power of an insolvent, and the provisional trustee, to place the whole of the property beyond the reach of the permanent trustee, who is alone entrusted with the settlement of the affairs of the insolvent, and to' whom alone the interests of the creditors are confided beyond the mere preservation of the property until he is appointed, which, (and nothing more,) is given to the provisional trustee.   *Brown,* therefore, acquired no right by the assignment of the judgment by *Causten,* to the money which is the subject of this suit; and under the agreement between the parties *Brice* is entitled to recover.

It was supposed, in argument, not to have been a *"purchase"* by *Brown* of the judgment, but a payment in discharge of it. We have considered it otherwise, and treated it as a purchase, the only light in which it can be viewed; and on that ground,

JUDGMENT AFFIRMED.